# NEW JERSEY REALTORS® STANDARD FORM OF
## RESIDENTIAL LEASE

©2001 NEW JERSEY REALTORS®, INC.



**THIS IS A LEGALLY BINDING LEASE THAT WILL BECOME FINAL WITHIN T...
DURING THIS PERIOD YOU MAY CHOOSE TO CONSULT AN ATTORNEY WHO CA...
THE LEASE. SEE SECTION ON ATTORNEY REVIEW FOR DET...**

## TABLE OF CONTENTS

| | | |
|---|---|---|
| 1 CONDO/CO-OP RIGHT OF TERMINATION | 18 NO ALTERATIONS OR INSTALLATION OF EQUIPMENT | 35 LEAD-BASED PAINT DOCUMENT ACKNOWLEDGMENT |
| 2 PROPERTY | 19 INSPECTION | 36 WINDOW GUARD NOTIFICATION |
| 3 TERM | 20 INSURANCE | 37 MEGAN'S LAW STATEMENT |
| 4 RENT | 21 FIRE AND OTHER CASUALTY | 38 CONSUMER INFORMATION STATEMENT |
| 5 INITIAL DEPOSIT | 22 LIABILITY OF LANDLORD & TENANT | ACKNOWLEDGEMENT |
| 6 SECURITY DEPOSIT | 23 PETS | 39 DECLARATION OF LICENSEE BUSINESS |
| 7 LATE PAYMENT PENALTY | 24 NOTICES | RELATIONSHIP |
| 8 ADDITIONAL RENT | 25 NO WAIVER | 40 ACKNOWLEDGMENT OF TRUTH IN RENTING |
| 9 POSSESSION AND USE | 26 SEVERABILITY | STATEMENT |
| 10 UTILITIES | 27 RENEWAL OF LEASE | 41 SMOKE DETECTORS, CARBON MONOXIDE ALARM |
| 11 NO ASSIGNMENT OR SUBLETTING | 28 FURNITURE | AND PORTABLE FIRE EXTINGUISHER COMPLIANCE |
| 12 VIOLATION, EVICTION & RE-ENTRY | 29 END OF TERM | 42 PRIVATE WELL TESTING |
| 13 DAMAGES | 30 ASSOCIATION BYLAWS, RULES & REGULATIONS | 43 SECURITY CAMERAS |
| 14 QUIET ENJOYMENT | 31 BINDING | 44 MEGAN'S LAW REGISTRY |
| 15 TENANT'S REPAIRS AND MAINTENANCE | 32 ENTIRE AGREEMENT | 45 OTHER LEASE PROVISIONS |
| 16 LANDLORD REPAIRS | 33 ATTORNEY REVIEW CLAUSE | |
| 17 ACCESS TO THE PROPERTY | 34 BROKER'S COMMISSION | |

## RESIDENTIAL LEASE AGREEMENT

**BETWEEN LANDLORD(S):** __Larry Lynch__

whose address is/are __201 A Haddon Ave   West Berlin NJ 08089__

**AND TENANT(S):** __Nazia Kamal__

whose address is/are __44 Rollingwood Dr   Voorhees NJ 08043__

The word "Landlord" as used in this Lease means all of the landlords above listed. In all instances in which the Landlord may exercise rights or perform obligations under this Lease, it may do so through its authorized agents or representatives.

The word "Tenant" as used in this Lease means all of the tenants above listed.

**1. CONDOMINIUM/CO-OPERATIVE RIGHT OF TERMINATION:** (The following statement generally, as required by law, must be included in a lease for a condominium or cooperative unit.) THIS BUILDING IS BEING CONVERTED TO OR IS A CONDOMINIUM OR COOPERATIVE. YOUR TENANCY CAN BE TERMINATED UPON 60 DAYS NOTICE IF YOUR APARTMENT IS SOLD TO A BUYER WHO SEEKS TO PERSONALLY OCCUPY IT. IF YOU MOVE OUT AS A RESULT OF RECEIVING SUCH A NOTICE, AND THE LANDLORD ARBITRARILY FAILS TO COMPLETE THE SALE, THE LANDLORD SHALL BE LIABLE FOR TREBLE DAMAGES AND COURT COSTS.

**2. PROPERTY:** The Tenant agrees to lease from the Landlord and the Landlord agrees to lease to the Tenant (the single family home) (apartment # __X__ ) (condominium unit # _____ ) (townhouse unit # _____ ) having a street address of __201 B Haddon Ave__ located in __West Berlin__ _____, New Jersey (referred to as the "Property").

New Jersey Realtors® Form-125-4/17   Page 1 of 8

Tenant's Initials: __NK__    Landlord's Initials: _____



3. **TERM:** The Term of this Lease is for **12 Months** (months) (years) starting on **December 1, 2025** and ending on **November 30, 2026** . This is referred to as the "Term". If the Landlord is unable to give possession of the Property to the Tenant on the first day of the Term, the Landlord shall not have any liability to the Tenant. However, the Tenant shall not be liable for the payment of rent until the Landlord gives possession of the Property to the Tenant. If the Landlord fails to give possession of the Property within 30 days of the start date set forth above, then the Tenant may terminate this Lease by giving notice to Landlord. If the first day of the Term is delayed, then the last day of the Term shall be adjusted accordingly, so that the Term remains for the number of months or years above stated.

4. **RENT:** The rent for the Term of this Lease is $ **17,400.00** , to be paid as follows: $**1,450.00** per month, which is due on the **24th** day of each month. Rent shall be payable to: _____

**Larry Lynch** _____

(NAME AND ADDRESS)

5. **INITIAL DEPOSIT:** Tenant has paid an initial deposit of $ **2,100.00** received on **November 27, 2024** that will be credited towards **year 2025-2026** the first month's rent or **0** the Security Deposit. The balance shall be paid as follows: First month's rent $ **0.00** Due on _____ , Security Deposit $ **2,100.00** Due on _____ .

6. **SECURITY DEPOSIT:** Tenant shall pay to the Landlord the sum of $ **2,100.00** (the "Security Deposit" which cannot exceed one and one-half months rent) to assure that the Tenant performs all of the Tenant's obligations under this Lease. If the Landlord collects any additional Security Deposit, the additional security collected annually shall not be greater than 10 percent of the current Security Deposit. Landlord shall comply with the Rent Security Deposit Act, N.J.S.A. 46:8-19 et seq. (the "Act"), unless this Lease is for owner occupied Property with not more than two rental units or is a seasonal tenancy of not more than 125 consecutive days. Any attempt to waive the requirements of the Act is prohibited and void as a matter of law.

The Act requires depositing the Security Deposit into a banking institution or investment company in New Jersey and notifying the Tenant in writing of the name and address of the banking institution or investment company, the type of account in which the Security Deposit is deposited or invested (for example, interest bearing or money market), the amount of the Security Deposit, and the current rate of interest for the account within 30 days of each of the following: (a) the Landlord's receipt of the Security Deposit from the Tenant; (b) the Landlord moving the deposit from one institution or fund to another (unless the move is due to a merger, in which case a notice to the Tenant must be within 30 days of receipt of notice by the Landlord of the merger if the merger occurs more than 60 days prior to the annual interest payment); or (c) the transfer or conveyance of ownership or control of the Property. Such notice also must be provided at the time of each annual interest payment. All interest earned on the Security Deposit shall be paid to the Tenant in cash or be credited toward the payment of rent due under this Lease upon the anniversary date of this Lease, the renewal of the Term or on January 31, if the Landlord gives the Tenant written notice that interest will be paid on January 31.

The Act also provides that, if the Landlord sells or conveys the Property during the Term of this Lease, the Landlord will transfer the Security Deposit plus the undistributed interest to the new owner. The Landlord shall notify the Tenant of the sale or conveyance, as well as the name and address of the new owner. The notice shall be given by registered or certified mail within five days after conveyance of title. After acquisition of the Property, the new owner shall be liable for investing the Security Deposit, making all interest payments, giving all notices and returning the Security Deposit as required under the Act, even if the Landlord fails to transfer the Security Deposit. The Landlord shall inspect the Property after the Tenant vacates at the end of the Term. Within 30 days of the termination of this Lease, the Landlord shall return the Security Deposit plus the undistributed interest to the Tenant, less any charges expended by the Landlord for damages to the Property resulting from the Tenant's occupancy. The interest and deductions shall be itemized in a statement by the Landlord, and shall be forwarded to the Tenant with the balance of the Security Deposit by personal delivery, or registered or certified mail. The Security Deposit may not be used by the Tenant for the payment of rent without the written consent of the Landlord.

7. **LATE PAYMENT PENALTY:** If the Tenant does not pay the rent by the **0** day of the month, the Tenant shall pay a late charge of **0** until the rent is received by Landlord. The late charge shall be added to the rent, and shall be considered as additional rent, which is defined in Section 8. In the event any rent check is returned unpaid due to insufficient funds, the Tenant agrees to pay the Landlord a $ **0.00** processing charge. In such event, the Landlord reserves the right to demand that future rent payments be made in cash, bank or certified check.

8. **ADDITIONAL RENT:** Landlord may perform any obligations under this Lease which are Tenant's responsibility and which Tenant fails to perform. The cost to Landlord for such performance may be charged to tenant as "additional rent" which shall be due and payable with the next installment of monthly rent. Landlord has the same rights against Tenant for failure to pay additional rent as Landlord has for Tenant's failure to pay monthly rent. This means that the Landlord may evict Tenant for failure to pay additional rent.

9. **POSSESSION AND USE:** The Landlord shall give possession of the Property to the Tenant for the Term of this Lease except as otherwise provided in this Lease. The Tenant shall occupy the Property only as a private residence, and will not use the Property for any business, trade or profession. The Tenant shall not store any flammable, dangerous or hazardous materials at the Property, other than ordinary household cleaning materials. The Property shall not be allowed to be vacant for any extended period of time.

Tenant's Initials: **NK**

Landlord's Initials: **LL**

**10. UTILITIES:** The Tenant shall arrange to have the utilities transferred into Tenant's name prior to occupancy, and shall be responsible for paying the following utility services: ☑ Gas ☑ Electric ☐ Water ☑ Heat ☐ Sewer ☐ General Trash Disposal ☐ (Other) _____

The Landlord shall provide and pay for the following utility services: ☐ Gas ☐ Electric ☑ Water ☐ Heat ☐ Sewer ☑ General Trash Disposal ☐ (Other) _____. The Tenant agrees not to waste or unreasonably use any utility or appliance that is provided by the Landlord. Landlord shall not be responsible for any damage or loss caused to Tenant or Tenant's property because of an interruption in utility services over which Landlord has no reasonable means of control. Any such interruption shall not be grounds for Tenant to reduce or stop paying rent.

**11. NO ASSIGNMENT OR SUBLETTING:** The Tenant may not assign this Lease, sublet all or any part of the Property, or permit any other person to use the Property without the prior written permission of the Landlord. The Landlord may withhold such permission in Landlord's sole and absolute discretion.

**12. VIOLATION, EVICTION AND RE-ENTRY:** The Landlord reserves the right of re-entry. This means that if the Tenant violates the terms of this Lease, the Landlord may terminate this Lease and regain possession of the Property. This is done by a court proceeding known as an eviction. A complaint is served upon the Tenant and the Tenant must appear in court. The Landlord may also evict the Tenant for any other cause which is permitted by applicable law. When the eviction proceeding is concluded, the Landlord may regain possession of the Property.

**13. DAMAGES:** The Tenant is liable for all the Landlord's damages caused by the Tenant's breach of this Lease. Such damages may include loss of rent, the cost of preparing the Property for re-renting and a brokerage commission incurred finding a new tenant as a result of the Tenant's eviction or if the Tenant moves out prior to the end of the Term.

**14. QUIET ENJOYMENT:** The Tenant may occupy the Property without interference, subject to Tenant's compliance with the Terms of this Lease.

**15. TENANT'S REPAIRS AND MAINTENANCE:** The Tenant shall.
(a) Pay for all repairs, replacements and damages caused by the act or neglect of the Tenant, the Tenant's family, domestic employees, guests or visitors, which includes but is not limited to sewer and plumbing drainage problems caused by the Tenant.
(b) Keep and maintain the Property in a neat, clean, safe and sanitary condition.
(c) Cut the grass and maintain the shrubbery.
(d) Drive and park vehicles only in designated areas, if any.
(e) Take good care of the Property and all equipment, fixtures, carpeting and appliances located in it.
(f) Keep the furnace clean, and regularly change the furnace filters, if applicable.
(g) Keep nothing in the Property which is flammable, dangerous or which might increase the danger of fire or other casualty.
(h) Promptly notify the Landlord of any condition which requires repairs to be done.
(i) Use the electric, plumbing and other systems and facilities in a safe manner.
(j) Promptly remove all garbage and recyclables from the Property and place it at the curb (or other designated area) in the proper containers in accordance with the prescribed pick-up schedule.
(k) Not engage in any activity which may cause a cancellation or an increase in the cost of the Landlord's insurance coverages.
(l) Use no more electricity than the receptacles, wiring or feeders to the Property can safely carry.
(m) Obey all instructions, written or otherwise, of the Landlord for the care and use of appliances, equipment and other personal property.
(n) Do nothing to destroy, deface or damage any part of the Property.
(o) Promptly comply with all orders and rules of the Board of Health or any other governmental authority which are directed to the Tenant.
(p) Do nothing which interferes with the use and enjoyment of neighboring properties.
(q) Do nothing to cause any damage to any trees or landscaping on the Property.
(r) Keep the walks and driveway free from dirt, debris, snow, ice and any hazardous objects.
(s) Comply with such rules and regulations that may be published from time to time by the Landlord.

**16. LANDLORD REPAIRS:** The Landlord shall make any necessary repairs and replacements to the vital facilities serving the Property, such as the heating, plumbing and electrical systems, within a reasonable time after notice by the Tenant. The Tenant may be liable for the cost of such repairs and replacements pursuant to Section 15. The Landlord shall not be liable for interruption of services or inconvenience resulting from delays in making repairs or replacements if due to circumstances beyond Landlord's reasonable control.

**17. ACCESS TO THE PROPERTY:** The Landlord shall have access to the Property on reasonable notice to the Tenant in order to (a) inspect the interior and exterior of the Property, (b) make necessary repairs, alterations, or improvements, (c) supply services, and (d) show it to prospective buyers, appraisers, contractors or insurers. The Landlord may enter the Property without prior notice in the event of an emergency or if the Tenant is not home for more than seven consecutive days. If this Lease is not renewed as per Section 27 of this

Tenant's Initials: _NK_

Landlord's Initials: _LL_

Lease Agreement, Landlord shall then be allowed access to the Property at any time prior to the end of the Term for showing of Property to prospective tenants.

**18. NO ALTERATIONS OR INSTALLATION OF EQUIPMENT:** The Tenant may not alter or change the Property without first obtaining Landlord's written consent. By way of example, the Tenant may not:

(a) Install any improvement such as carpeting, paneling, floor tiles, or any other improvement which is nailed or tacked down, cemented or glued in;

(b) Install any locks or chain guards;

(c) Wallpaper, affix wall coverings or other permanent type decorations;

(d) Install or change the electrical, plumbing, heating or air cooling system.

When painting (whether interior or exterior), the Tenant must have the Landlord's permission regarding paint colors. All painting must be done in a professional and workmanlike manner. The Tenant shall repair all walls and ceilings which had pictures or fixtures attached, prior to vacating. Any and all changes, additions or improvements made without the Landlord's written consent shall be removed by the tenant on demand by the Landlord. The Property shall be in substantially the same condition at the end of the Term as it was at the beginning of the Term, reasonable wear and tear excepted.

All permitted changes, additions and improvements shall become the property of the Landlord when completed, shall be fully paid for by the Tenant, and shall remain as part of the Property at the end of the Term of this Lease, unless the Landlord demands that the Tenant remove them. The Tenant shall not allow any construction lien or other claim to be filed against the Property. If any such lien or claim is filed against the Property, the Tenant shall have it promptly removed.

**19. INSPECTION:** If the municipality requires a continued use inspection or certificate of occupancy prior to occupancy, the Landlord shall be responsible for obtaining such inspections and certificates as well as making the necessary repairs.

**20. INSURANCE:** The Tenant shall be responsible for obtaining, at Tenant's own cost and expense, a tenant's insurance policy for the Tenant's furniture, furnishings, clothing and other personal property. The Tenant's personal property shall not be the responsibility of the Landlord, and will not be insured by the Landlord. The Tenant's insurance policy must also include liability coverage. Upon request, the Tenant shall periodically furnish Landlord with evidence of Tenant's insurance policy.

**21. FIRE AND OTHER CASUALTY:** Immediate notice shall be given by the Tenant to Landlord of any fire or other casualty which occurs at the Property. If the Property is uninhabitable, Tenant's obligation to pay rent shall cease until the time that the Property is restored by the Landlord. If only a part of the Property is uninhabitable, then the rent shall be adjusted proportionately.

If only part of the Property is damaged, the Landlord shall repair the Property within a reasonable period of time. Landlord shall not be obligated to repair or restore any improvements that Tenant has made to the Property.

Either party may cancel this Lease if the Property is so damaged by fire or other casualty that the property cannot be repaired within 90 days. The Landlord's determination in such regard shall be final, conclusive and binding on both parties.

The Lease shall end if the Property is totally destroyed. The Tenant shall pay rent to the date of destruction.

If the fire or other casualty is caused by the act or neglect of the Tenant, the Tenant's family, domestic employees, guests or visitors, the Tenant shall pay for all repairs and other damages.

**22. LIABILITY OF LANDLORD AND TENANT:** The Landlord is not legally responsible for any loss, injury or damage to any person or property unless such loss, injury or damage is directly caused by the Landlord's negligence. The Tenant is legally responsible for loss, injury or damage to any person or property caused by the negligence of the Tenant, the Tenant's family members, domestic employees, guests or visitors.

**23. PETS:** No dogs, cats or other pets shall be permitted on the Property without the prior written consent of the Landlord, which the Landlord may withhold in the Landlord's sole and absolute discretion.

**24. NOTICES:** All notices given under this Lease must be in writing in order to be effective. Delivery of notices may not be refused. If any notice is refused, it shall be considered to have been effectively given. Notices shall be given by (a) personal delivery, or (b) certified mail, return receipt requested, unless applicable law requires a different means of notice. Notices to the Landlord shall be at the address on the first page of this Lease, and to the Tenant at the Property.

**25. NO WAIVER:** The Landlord's failure to enforce any obligation of the Tenant contained in this Lease in any one instance shall not prevent the Landlord from enforcing the obligation at a later time.

**26. SEVERABILITY:** If any term or condition of this Lease is contrary to law, the remainder of the Lease shall be unaffected and shall continue to be binding upon the parties.

**27. RENEWAL OF LEASE:** The Tenant must be offered a renewal of this Lease by the Landlord, unless the Landlord has good cause not to do so under applicable law. Reasonable changes may be included in the renewal Lease. Not less than _____ days

Tenant's Initials: _NK_

Landlord's Initials: _LL_

before the expiration of the Term of this Lease, the Landlord shall notify the Tenant of the proposed terms for the renewal Lease. Within **30** days after the Tenant receives the Landlord's renewal notice, Tenant shall notify Landlord whether Tenant accepts or rejects the proposed renewal Lease. If the Tenant does not notify the Landlord of Tenant's acceptance, then the Landlord's proposal shall be considered to have been rejected. If the Tenant does not accept the renewal Lease, the Tenant must vacate the Property at the end of the Term.

**28. FURNITURE:** If the Property is leased in furnished condition, or if the Landlord leaves personal property to be used by the Tenant, the Tenant shall maintain the furniture and furnishings in good condition and repair. A list of such items shall be attached to this Lease and signed by the Landlord and the Tenant.

**29. END OF TERM:** At the end of the Term, the Tenant shall (a) leave the Property clean, (b) remove all of the Tenant's property, (c) repair any damage including that caused by moving, (d) make arrangements for final utility readings and pay all final utility bills and (e) vacate the Property and return it with all keys to the Landlord in the same condition as it was at the beginning of the Term, except for normal wear and tear.

**30. ASSOCIATION BYLAWS, RULES AND REGULATIONS:** If Property is subject to any Association Bylaws and Rules and Regulations, Tenant agrees to comply with such Association Bylaws and Rules and Regulations including any amendments.

**31. BINDING:** This Lease is binding on the Landlord and the Tenant and all parties who lawfully succeed to their rights and responsibilities.

**32. ENTIRE AGREEMENT:** This Lease contains the entire agreement of the Landlord and Tenant. No representations have been made by the Landlord or its real estate broker or agents except as set forth in this Lease. This Lease can only be changed in writing by an agreement signed by both the Landlord and the Tenant.

**33. ATTORNEY REVIEW CLAUSE:**
**(1) Study by Attorney.**
The Tenant or the Landlord may choose to have an attorney study this Lease. If an attorney is consulted, the attorney must complete his or her review of the Lease within a three-day period. This Lease will be legally binding at the end of this three-day period unless an attorney for the Tenant or the Landlord reviews or disapproves of the Lease.
**(2) Counting the Time.**
You count the three days from the date of delivery of the signed Lease to the Tenant and the Landlord. You do not count Saturdays, Sundays or legal holidays. The Tenant and the Landlord may agree in writing to extend the three-day period for attorney review.
**(3) Notice of Disapproval.**
If an attorney for the Tenant or Landlord reviews and disapproves of this Lease, the attorney must notify the Broker(s) and the other party named in this Lease within the three-day period. Otherwise this Lease will be legally binding as written. The attorney must send the notice of disapproval to the Broker(s) by fax, email, personal delivery, or overnight mail with proof of delivery. Notice by overnight mail will be effective upon mailing. The personal delivery will be effective upon delivery to the Broker's office. The attorney may also, but need not, inform the Broker(s) of any suggested revision(s) in the Lease that would make it satisfactory.

**34. BROKER'S COMMISSION:** The Broker's Commission is earned, due and payable upon signing of a fully executed Lease Agreement and satisfaction of the Attorney Review Period set forth in Section 33 of this Lease. The Commission shall be paid by the
☑ Landlord in accord with previously executed Listing Agreement.

☐ Tenant and shall be payable as follows: _____

_____

**Homesmart First Advantage**
Listing Broker

**215 Fries Mill Road   Turnersville NJ  08012**                    **(856) 666-3000**
Address                                                              Telephone #

**terrydaytonsells@gmail.com**          **(856) 562-2276**
Email Address                           Cell Phone#                  Fax#

**Homesmart First Advantage**
Participating Broker                                                 Commission

Tenant's Initials: _NK_                 Landlord's Initials: _LL_

HomeSmart First Advantage Realty Corporate Office
498 Kings Hwy North, Cherry Hill, NJ 08034

_____   _____
Address                                                                    Telephone #

_____   _____
Email Address                    Cell Phone#                Fax#

**35. LEAD-BASED PAINT DOCUMENT ACKNOWLEDGMENT: (Applies to dwellings built before 1978)**
The Tenant acknowledges receipt of the EPA pamphlet, "Protect Your Family From Lead In Your Home". Moreover, a copy of the document entitled, "Disclosure of Information on Lead-Based Paint and Lead-Based Paint Hazards" has been fully completed, signed by Tenant, Landlord and Broker(s) and is appended to and made a part of this Agreement.

**36. WINDOW GUARD NOTIFICATION:**
THE OWNER (LANDLORD) IS REQUIRED BY LAW TO PROVIDE, INSTALL AND MAINTAIN WINDOW GUARDS IN THE APARTMENT IF A CHILD OR CHILDREN 10 YEARS OF AGE OR YOUNGER IS, OR WILL BE, LIVING IN THE APARTMENT OR IS, OR WILL BE, REGULARLY PRESENT THERE FOR A SUBSTANTIAL PERIOD OF TIME IF THE TENANT GIVES THE OWNER (LANDLORD) A WRITTEN REQUEST THAT THE WINDOW GUARDS BE INSTALLED. THE OWNER (LANDLORD) IS ALSO REQUIRED, UPON THE WRITTEN REQUEST OF THE TENANT, TO PROVIDE, INSTALL AND MAINTAIN WINDOW GUARDS IN THE HALLWAYS TO WHICH PERSONS IN THE TENANT'S UNIT HAVE ACCESS WITHOUT HAVING TO GO OUT OF THE BUILDING. IF THE BUILDING IS A CONDOMINIUM, CO-OPERATIVE OR MUTUAL HOUSING BUILDING, THE OWNER (LANDLORD) OF THE APARTMENT IS RESPONSIBLE FOR INSTALLING AND MAINTAINING WINDOW GUARDS IN THE APARTMENT AND THE ASSOCIATION IS RESPONSIBLE FOR INSTALLING AND MAINTAINING WINDOW GUARDS IN HALLWAY WINDOWS. WINDOW GUARDS ARE ONLY REQUIRED TO BE PROVIDED IN FIRST FLOOR WINDOWS WHERE THE WINDOW SILL IS MORE THAN SIX FEET ABOVE GRADE OR THERE ARE OTHER HAZARDOUS CONDITIONS THAT MAKE INSTALLATION OF WINDOW GUARDS NECESSARY TO PROTECT THE SAFETY OF CHILDREN.

**37. MEGAN'S LAW STATEMENT:**
UNDER NEW JERSEY LAW, THE COUNTY PROSECUTOR DETERMINES WHETHER AND HOW TO PROVIDE NOTICE OF THE PRESENCE OF CONVICTED SEX OFFENDERS IN AN AREA. IN THEIR PROFESSIONAL CAPACITY, REAL ESTATE LICENSEES ARE NOT ENTITLED TO NOTIFICATION BY THE COUNTY PROSECUTOR UNDER MEGAN'S LAW AND ARE UNABLE TO OBTAIN SUCH INFORMATION FOR YOU. UPON CLOSING, THE COUNTY PROSECUTOR MAY BE CONTACTED FOR SUCH FURTHER INFORMATION AS MAY BE DISCLOSABLE TO YOU.

**38. CONSUMER INFORMATION STATEMENT ACKNOWLEDGMENT:** By signing below, the Landlord and Tenant acknowledge they received the Consumer Information Statement on New Jersey Real Estate Relationships from the brokerage firms involved in this transaction prior to the first showing of the Property.

**39. DECLARATION OF LICENSEE BUSINESS RELATIONSHIP(S):**
A. Homesmart First Advantage
_____ , (name of firm)
AND Theresa Dayton
_____ (name(s) of licensee(s))
AS ITS AUTHORIZED REPRESENTATIVE(S) ARE WORKING IN THIS TRANSACTION AS (choose one)
☐ LANDLORD'S AGENTS   ☐ TENANT'S AGENTS   ☑ DISCLOSED DUAL AGENTS   ☐ TRANSACTION BROKERS.
B. INFORMATION SUPPLIED BY Homesmart First Advantage
_____ (name of other firm)
HAS INDICATED THAT IT IS OPERATING IN THIS TRANSACTION AS A (choose one)
☐ LANDLORD'S AGENT ONLY   ☐ TENANT'S AGENT ONLY   ☐ DISCLOSED DUAL AGENT   ☐ TRANSACTION BROKER.

**40. ACKNOWLEDGMENT OF TRUTH IN RENTING STATEMENT: (Applies to all Tenants with a rental term of at least one month living in residences with more than two dwelling units or more than three if the Landlord occupies one.)** By signing below, Tenant acknowledges receipt of the booklet, "Truth In Renting - A guide to the rights and responsibilities of residential tenants and landlords in New Jersey".

**41. SMOKE DETECTORS, CARBON MONOXIDE ALARM AND PORTABLE FIRE EXTINGUISHER COMPLIANCE:**
The Certificate of smoke detectors, carbon monoxide alarm and portable fire extinguisher compliance (CSDCMAPFEC), as required by law, shall be the responsibility of the Landlord. If such alarms are battery operated, the Tenant shall be responsible for their maintenance.

**42. PRIVATE WELL TESTING: (This section is applicable if the Property's potable water supply is provided by a private well for which testing of the water is not required by any State law other than the Private Well Testing Act (the "Act" - N.J.S.A. 58:12A-26 to 37).** By March 14, 2004, and at least once every five years thereafter, the Landlord is required to test the potable water supply for the Property in accordance with the Act. Within thirty (30) days after receiving the test results, the Landlord shall

Tenant's Initials: _Uk_          Landlord's Initials: _LL_

Envelope ID: A5507C8E0E4ED4009-8BF9A704BE5B88685A

provide a written copy thereof to the Tenant. Also, the Landlord is required to provide a written copy of the most recent test results to any new tenant at the Property. If the Property is for "seasonal use or rental," the Landlord shall either post the tests results in a readily visible location inside of the Property or provide a written copy thereof to the tenant. A "seasonal use or rental" means use or rental for a term of not more than 125 consecutive days for residential purposes by a person having a permanent place of residence elsewhere. By signing below, Tenant acknowledges receipt of a written copy of the test results, or in the case of a seasonal rental, if it has not received the test results, acknowledges the posting thereof inside of the Property in accordance with the Act.

**43. SECURITY CAMERAS:**
If there are any security cameras on the Property, including but not limited to what often are called "nanny cams" or other video or audio taping equipment, the Landlord represents that the security cameras will be disabled and not functioning during the Term of this Lease unless only the Tenant has the use of the security cameras and neither the Landlord nor any other party has access to or the use of it. The Landlord acknowledges that any use or access to the security system by the Landlord or any other party during the tenancy may constitute an invasion of privacy of the Tenant and subject the Landlord to civil damages and criminal charges. Specifically excluded from this Section are such security cameras in multi-family housing that are in common areas, such as common hallways, the exterior of the building(s), entrance ways to the building(s), common laundry rooms, or common parking lots or garages.

**44. MEGAN'S LAW REGISTRY:** Tenant is notified that New Jersey law establishes an Internet Registry of Sex Offenders that may be accessed at www.njsp.org.

**45. OTHER LEASE PROVISIONS, IF ANY:**

Addendum attached

No Pets or smoking permitted on property

Landlord is willing to accept full years rent up front and 1-1/2 months security

Tenant will pay full years rent along with Security Deposit upon executed lease

Children Living at Property:

Z███ A███████ 12
Z███ A███████ 10

Tenant's Initials: NK

Landlord's Initials: LL

HomeSmart First Advantage Realty Corporate Office
498 Kings Hwy North, Cherry Hill, NJ 08034
Phone: (856) 363-3000    Fax: (856) 481.0750

**WITNESS:**

| | Landlord | **Larry Lynch** | | Date |
| --- | --- | --- | --- | --- |
| | Landlord | | | Date |
| | Landlord | | | Date |
| | Landlord | | | Date |
| | Tenant | **Nazia Kamal** | | 11-15-2025 Date |
| | Tenant | | | Date |
| | Tenant | | | Date |
| | Tenant | | | Date |